J-S28029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: D.A.G., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: F.K.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 153 MDA 2018 |

Appeal from the Decree, December 18, 2017,
In the Court of Common Pleas of Berks County,
Orphans' Court at No(s):  85543.

BEFORE:  OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JULY 17, 2018**

Father, F.K.B., appeals from a decree terminating his parental rights to his Child, D.A.G. After careful consideration and review, we reverse and vacate the termination decree and remand with instructions.

The relevant facts and procedural history of this case can be summarized as follows. Child came to the attention of Berks County Children and Youth Services (the "Agency") on February 17, 2016, after Child was released from a one-month hospital stay in the NICU, necessitated by Mother's heroin use while pregnant. Child was released to Mother, who relapsed one month later in violation of the Agency's support and supervision plan. Father did not present himself as a resource for Child at any point during these events, so the Agency took protective custody of Child. Child was

subsequently adjudicated dependent on March 30, 2016 and placed in kinship care with maternal grandfather and grandfather's paramour.

When Child was born, Father was made aware of the birth, but did not appear at the hospital. Father and Child's mother separated when Mother was two months pregnant. Father did not believe Child was his at any time during the pregnancy. At the time of the birth, Father's location was unknown.

When the Agency filed the petition for emergency custody and a dependency petition in March 2016, family members indicated that Father was on the run from authorities. Once Child was declared dependent, Mother and Father were ordered to participate in parenting education, to obtain drug and mental health evaluation and treatment, to visit on a regular basis, and to establish and maintain stable and appropriate housing.

Shortly after the emergency custody and dependency petitions, on April 5, 2016, Father was incarcerated in the Berks County Jail. On October 13, 2016, Father was sentenced to one to two years of probation for crimes associated with a car accident and 24 to 60 months for drug related offenses. On October 26, 2016, he received an additional six months to two years for receiving stolen property. Throughout his incarceration, Father was moved multiple times: initially to SCI Graterford, then to SCI Camp Hill for a brief stint, and finally to SCI Dallas.

Prior to Father's sentencing, a dispositional hearing for the dependency case was held on May 13, 2016. Father was present at the hearing and represented by counsel. Upon placement of the Child, the court set a primary

goal of reunification with a parent and a concurrent goal of adoption. At that time, Father had not been confirmed as Child's father, but the court determined that Father and Child should have weekly Skype visits upon a paternity confirmation. Paternity was confirmed by DNA testing one month later.

The court held permanency review hearings on August 23, 2016, February 9, 2017, and July 11, 2017. Father remained incarcerated, but participated in all three permanency review hearings via telephone. At all three hearings, the court found that Father had not complied with the permanency plan and made no progress towards alleviating the circumstances that led to child's placement.

After the first permanency hearing, the court ordered that Father have biweekly supervised visits with Child. After the subsequent hearings, the court ordered that Father's visits be solely through electronic means due to the restrictions associated with child visits at state correctional facilities.

Father was offered caseworker services through the Agency and Partners in Parenting on an as needed basis. Father corresponded with the Agency through letters and sent Child letters monthly. Father also claimed he completed a parenting program at the Berks County Jail, but only provided written proof that he completed six sessions of drug and alcohol psycho-education group counseling at the Berks County Jail. Father also testified that he was on the waiting list for several other programs.

Father had three supervised visits with Child at the Berks County Jail, but after being transferred to the state correctional institutions, he was unable to have further visits due to Department of Corrections' policies. As such he had not seen Child for slightly over a year at the time of the termination hearing. Notably, the court-ordered electronic Skype visits never occurred because the facilities where Father was incarcerated did not have video communication capabilities.

The Agency filed a petition to involuntarily terminate Father's parental rights on June 14, 2017 on the grounds set forth in 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (8). The court held a hearing on the petition on November 13, 2017 and December 11, 2017.[1] Father attended the hearing via video on both days. On December 18, 2017, the trial court granted the petition to terminate Father's parental rights. At the time of termination, Child was just shy of two years old. Father timely appealed. Both Father and the trial court complied with Pa.R.A.P. 1925.

On appeal, Father raised the following issues (re-ordered for ease of disposition):

> A) Was the evidence submitted before the trial court insufficient to prove the elements of sections 2511(a)(1), (2), (5), and (8) by clear and convincing evidence?
>
> B) Did the trial court err in involuntarily terminating Father's parental rights absent clear and convincing evidence

___

[1] The court entered an order approving Mother's voluntarily termination of her parental rights on November 13, 2017. Mother is not a party in this appeal.

where the record contains evidence that Father completed a portion of his family service plan goal?

C) Did the trial court err in involuntarily terminating Father's parental rights considering Father's participation in prison counseling programs, rehabilitation from criminal activity, expected upcoming release, and development of a parenting plan for his child?

D) Did the trial court err in determining by clear and convincing evidence that the termination of Father's parental rights best served the needs and welfare of his child?

Father's Brief at 4.

Our standard of review on an appeal of a decree terminating parental rights is well settled:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.,* 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *Id.* at 806. We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C. & J.R.C.,* 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.,* 855 A.2d 68, 73–74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003).

The termination of parental rights is controlled by 23 Pa.C.S. § 2511. Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under Section 2511(a). *See In the Interest of B.C.,* 36 A.3d 601 (Pa. Super. 2012).

In this case, the Agency sought to terminate Father's parental rights pursuant to Title 23 Sections 2511(a)(1), (2), (5), (8) which provide as follows:

## § 2511. Grounds for involuntary termination

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

....

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

....

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8).  Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.,* 843 A.2d 380, 384 (Pa. Super. 2004).

We begin our analysis generally, by noting that Pennsylvania recognizes that incarceration alone is not determinative of parental incapacity; however, it can be determinative in showing that a parent is incapable of providing

- 7 -

essential parental care. ***In re Adoption of S.P.***, 47 A.3d 817, 831 (Pa. 2012). "The child's need for consistent parental care and stability cannot be put aside or put on hold simply because the parent is doing what [he] is supposed to do in prison." ***In re E.A.P.***, 944 A.2d 79, 84 (Pa. Super. 2008). Parental rights cannot be preserved by a parent waiting for a more convenient time to fulfill their parental duties. ***In re D.J.S.***, 737 A.2d 283, 287 (Pa. Super. 1999). Even while incarcerated, "[p]arental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." ***In re Dale A., II,*** 638 A.2d 297, 302 (Pa. Super. 1996).

Father claims he completed some of his family service plan goals while incarcerated. Undeniably, Father has made efforts to maintain contact with Child in an attempt to foster and maintain a relationship to the best of his ability under the circumstances. The record is filled with numerous letters that Father wrote to Child during his period of incarceration. Additionally, Father testified to completing drug and alcohol counseling (N.T., 11/13/17 at 28) and he stated he was on a waiting list for other programs, including a parenting program. N.T., 12/11/17 at 32. Father also testified he studied cases similar to his, and he read about what he could do to better himself as a parent. N.T., 12/11/17 at 32. It is evident that Father did everything in his limited power to maintain the parent-child relationship, despite the difficulties presented by his incarceration.

The testimony was also clear that Father's release was only months away from the date of the termination hearing. The hearing was conducted on December 11, 2017, and the record shows that Father was scheduled to be released in either April or June of 2018. N.T., 11/13/17 at 7.[2] Additionally, the trial court heard testimony regarding Father's home plan which indicated that he had both a permanent residence and employment secured upon his release. N.T., 12/11/17 at 29.

In his first issue on appeal, Father challenges the termination under all four subsections cited by the Agency in the termination petition, namely 23 Pa.C.S.A. §§ 2511 (a)(1), (2), (5), and (8). In its brief to this Court, the Agency mentions § 2511(a)(1), made no mention of (a)(5) or (a)(8), and only developed an argument under (a)(2) to support the termination decree.[3] Notably, the trial court failed to identify what section or sections of § 2511(a) it relied on as the basis for terminating Father's parental rights. Instead, in both its decree and opinion, the court vaguely stated that termination was proper based on the facts of this case. We could opt to remand to the trial court for a more specific opinion. However, based on our review of the record,

_____

[2] This Court takes judicial notice of the public record, indicating that Father was released from prison in early April of 2018. "A judicially noticed fact must be one not subject to reasonable dispute in that it is…capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably question. Pa.R.E. 201(b). Judicial notice can be taken at any time, including on appeal. "The court may take judicial notice *at any stage of the proceeding*". Pa.R.E. 201(d) (emphasis added).

[3] Child's Guardian ad Litem did not file a separate brief, but instead joined in the Agency's brief.

under any of the four possible sections for termination, we believe termination was an abuse of discretion. Accordingly, we will proceed to address the merits of this argument in spite of the trial court's limited opinion.

First, under § 2511(a)(1), the court can terminate parental rights if CYS shows clear and convincing evidence that parent's conduct indicated either a settled purpose for relinquishing parental claim to the child, or refusal or failure to perform parental duties and this conduct continued for a period of at least six months prior to the termination petition being filed. As we have already stated, while incarcerated, a parent must put forth a good-faith interest and effort in maintaining the parent-child relationship. **In re Dale, A., II supra.** Parental duties are more than just a financial obligation, they involve sustaining an interest in the child and making a genuine effort to "maintain a place of importance in the child's life." **In re Adoption of A.C.**, 162 A.3d 1123, 1129 (Pa. Super. 2017). Our Supreme Court has held when CYS seeks to terminate the rights of an incarcerated parent under section 2511(a)(1) the court must inquire as to whether the parent has utilized all the resources he has available while in prison in continuing a close relationship with the child. **In re Adoption of McCray,** 331 A.2d 652, 655 (Pa. 1975). Where the parent fails to exercise reasonable firmness in maintaining that relationship, his rights may be terminated. **Id.**

Here, there was no "clear and convincing" evidence to prove Father refused or failed to perform his parental duties. His efforts in letter writing and taking part in drug and alcohol and mental health programs indicated a good-

faith interest and effort in maintaining and growing the parent-child relationship. At no time did he express any desire to forfeit his parental rights. The evidence showed Father exercised reasonable firmness in maintaining his relationship with Child and did everything in his power, while incarcerated, to perform his parental duties in the six months prior to the petition for involuntary termination. Therefore, the court abused its discretion when it terminated Father's parental rights under § 2511(a)(1).

Second, Father challenges the termination under § 2511(a)(2). This subsection was the only basis for termination argued by the Agency and the GAL. It provides that a court may terminate parental rights when a parent's continued incapacity has caused the child to be without "essential parental care, control, or subsistence necessary for his physical or mental well-being" and the condition that caused the incapacity "cannot or will not be remedied by the parent." 23 Pa.C.S.A. § 2511(a)(2).

The Agency avers that the court should not ignore a child's need for a stable home and strong parental ties, especially where the disruption of the family has already taken place and there is no reasonable prospect of reuniting it. Agency Brief at 9. We agree. However, the facts of this case, at the time of the termination hearing, indicate a reasonable prospect of reuniting the family; Father was scheduled to be released from prison in less than four months. These circumstances contrast dramatically from those in *In re Adoption of S.P. supra,* where our Supreme Court determined that termination was appropriate. In that case, even if the father was paroled at

the earliest possible date, his release would not remedy the incapacity because he did not have any housing or employment prospects and would have to live in a halfway house. Here, Father was released shortly after the termination hearing and the testimony indicated he had arranged concrete employment and housing. Unlike the father in **S.P.**, Father here showed he was able to remedy the incapacity within a relatively short period of time. This was not a case of prolonged incarceration. Additionally, with employment and a place to live, Father would completely remedy the incapacity that contributed to Child's placement. Therefore, we find that in terminating Father's parental rights under (a)(2) based on these facts, the trial court abused its discretion.

In his third and fourth contentions, Father claims the court could not terminate under sections 2511 (a)(5) or (a)(8). This Court, en banc, has determined that those sections do not apply when a child was not "removed" from that parent's care. **In re C.S.**, 761 A.2d 1197, 1200 (Pa. Super. 2000) (en banc). The father in **In re C.S.** argued that his child was not "removed" from his care, because the child was never in his care; father was incarcerated at the time of placement. This court agreed that sections (a)(5) and (a)(8) did not apply under those circumstances. **Id.** Similarly, under the facts of this case, because the Child was placed almost immediately upon his discharge from the intensive care unit of the hospital, it does not appear the child was "removed" from Father's care. Although those sections of 2511(a) initially discuss removal, they also discuss placement. This court has held that section

(a)(5) and (a)(8) cannot apply when a child is placed, and the parent whose rights are the subject of the termination proceeding was never in custody of the child. *In re Z.P.*, 994 A.2d 1108, n.2 (Pa. Super. 2010). Therefore, even if they were to apply under our facts, we conclude termination was not appropriate under (a)(5) or (a)(8) for the reasons discussed below.

As we just discussed, Father challenges the termination of his parental rights under § 2511(a)(5). Termination is proper under § 2511(a)(5) if the child has been removed from the care of the parent for a period of at least six months, the conditions that led to the removal or placement of the child continue to exist, and the parent cannot or will not remedy those conditions within a reasonable time. 23 Pa.C.S.A. § 2511(a)(5). The reasonable time requirement contained in the statute is intended to prevent children from growing up in an indefinite state of limbo, without parents, and at the same time being unavailable for adoption by a willing foster family. *In re N.C.*, 763 A.2d 913, 918 (Pa. Super. 2000).

The trial court believed that Father's proposed remedy of the conditions that led to removal (i.e. that he would be released in a few months, his secured employment, and his housing) was based on nothing more than "hope", and he would not be able to remedy the conditions for several more months. Trial Court Opinion, 2/14/18 at 7. Father's testimony indicated that he had more than hope for employment and housing upon his release; he had a job performing maintenance at a hotel and he had a residence with his mother. N.T., 11/13/17 at 21-22. Additionally, Father was able to remedy the condition

that led to Child's placement within a "reasonable time." Father's sentence was near its end at the time of the termination hearing, yet the trial court still chose to grant the Agency's petition and terminate his parental rights. The time frame for Father to remedy the condition was imminently reasonable under the circumstances. His release was only a few months away, not years down the road, as is the case in typical involuntary terminations involving incarcerated parents. **See In re Adoption of S.P.**, 47 A.3d 817 (where father was sentence to five to ten years in prison for third degree murder); **In the Interest of C.S.**, 761 A.2d 1197 (Pa. Super. 2000) (where father's maximum release date was five years from the date of the termination hearing). Additionally, Child was in a kinship placement, not lingering in non-kinship foster care.

We conclude termination of Father's parental rights was improper under § 2511(a)(5). The trial court abused its discretion in finding that Father would not be able to remedy the condition that required child's placement within a reasonable time, as Father's release was scheduled for the very near future, not an indefinite date years down the road.

Finally, Father challenges the termination of his parental rights under § 2511(a)(8). This section allows for involuntary termination when the child has been removed from the care of the parent, twelve months or more have elapsed from the date of removal or placement, the conditions which led to removal or placement of the child continue to exist, and termination would best serve the needs and welfare of the child. 23 Pa.C.S.A. § 2511(a)(8).

It is true that at the time of the termination hearing the requisite number of months had elapsed for termination under this section, and at that time Father was still incarcerated, so the condition that led to Child's placement continued to exist. However, the Agency did not present clear and convincing evidence that terminating Father's parental rights would best serve the needs and welfare of the child for several reasons.

First, at the time of termination, Child was less than two years old. While Child has a right to permanency and consistency, Father was scheduled for release within months of his rights being terminated. Father's incarceration was not a lengthy one. His release was scheduled in time to be able to play a substantial role in Child's life given Child's age.

Second, the purpose of this statute, allowing involuntary termination of parental rights, is to create an easier pathway for the child to be adopted when the parent has failed to meet the needs of the child. *See In re Male Infant B.E.*, 377 A.2d 153, 155 (Pa. 1977) (explaining "We think it clear that the Legislature intended the petition for involuntary termination of parental rights to be available solely as an aid to adoption"). That is not necessary here. Father expressed interest in being a part of Child's life, and he was scheduled to be released from prison in time to do so. Father's imminent release would not leave the child without essential care due to a long term incarceration. *See In re R.S.*, 36 A.3d 567, 578 (Pa. 2011) (Baer, J. concurring). In his concurrence in *R.I.S.*, Justice Baer further notes "the fact of incarceration during an ongoing dependency action will not disqualify a parent from

resuming parental responsibility so long as the parent will be released quickly enough to permit the court to provide the child with timely permanency upon reunification." *Id* at 576. The focus in these cases should be to both *preserve family unity whenever possible*, and provide an adoption alternative when the reunification of the family cannot be achieved in a timely fashion. *Id* at 577; 42 Pa.C.S.A. § 6301(b)(1) (emphasis added).

Third, and critically in this case, there was no indication in the record that there was a party willing to adopt child following the termination of Father's parental rights. We find the record devoid of any evidence indicating Child's imminent adoption by the kinship guardian or any other party. Although he was placed with the maternal grandfather and his significant other, the record did not show they were prospective adoptive parents. Questions on this matter were not allowed by the trial court. *See* N.T., 11/13/17 at 49. While this information would typically be irrelevant for a termination hearing, we believe that evidence of a prospective adoption is relevant when CYS pursues termination of parental rights under § 2511(a)(8) as a prospective adoption relates to the best interests of the child.

We recognize that both case law and 23 Pa.C.S.A. § 2512(b) do not require an imminent adoption when the petitioner seeking termination is an agency. *In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013). However, in *In re T.S.M.*, our Supreme Court limited termination without a prospective adoptive family to circumstances where failure to terminate impedes future placement. The Court said:

> …while termination of parental rights generally should not be granted unless adoptive parents are waiting to take a child into a safe and loving home, termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home.

*Id* at 269.

Clearly, our Supreme Court has drawn a distinction between cases where the termination of parental rights is necessary because the child-parent bond is inhibiting placement with a permanent adoptive family, and cases where no toxic bond prevents permanent placement. Where no impediment to placement exists, the court should not terminate parental rights unless there is an adoptive family ready to accept the child into their home. *Id*.

Here, no toxic or problematic bond between Father and Child was creating an impediment to the search for, or placement with, an adoptive family which would necessitate termination of Father's parental rights. Rather, the record was devoid of evidence concerning an adoptive family ready and willing to accept Child into their home. Therefore, under these circumstances, with the facts of record, the court abused its discretion in finding that terminating Father's parental rights would be in Child's best interests.

As we have already discussed, under the facts presented here, it was possible for the Agency and Father to work toward reunification in a timely manner in this case because Father was not serving a long term incarceration and the record indicated there was no definitive adoptive parent planned for Child. In sum, the age of the Child, Father's imminent release from jail, and

the lack evidence indicating a prospective adoptive family show that the trial court abused its discretion in terminating under § 2511(a)(8).

We need not discuss the trial court's findings under 23 Pa.C.S.A. § 2511(b) because the requirements of § 2511(a) were not satisfied. Thus, no analysis of a bond between Father and Child is warranted.

Because the court abused its discretion in terminating parental rights under §§ 2511(a)(1), (2), (5), and (8) due to a lack of clear and convincing evidence, we reverse the decision of the trial court and vacate the decree terminating Father's parental rights.

We remand for the continuation of the dependency proceedings with the goal of reunification to give Father a reasonable opportunity to fulfill the terms and conditions of the family service plan. If Father fails to comply with the plan or fails to make sufficient progress, the Agency or the Guardian ad Litem can file a new petition to terminate parental rights. In light of this decision we need not address Father's remaining issues on appeal.

Decree vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/17/2018